**DICKINSON WRIGHT PLLC**
Bennett Evan Cooper (CA 128544)
bcooper@dickinsonwright.com
Bradley A. Burns (AZ 030508) (pro hac vice pending)
bburns@dickinsonwright.com
Amanda E. Newman (AZ 032462) (pro hac vice pending)
anewman@dickinsonwright.com
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004
Tel: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Defendant Xcentric Ventures, LLC*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark Selker, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Xcentric Ventures, LLC and Does 1 through 300, inclusive,<br><br>Defendants. | No. 22-cv-00393-BEN-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION**<br><br>Hearing Date: May 2, 2022<br>Hearing Time: 10:30 a.m.<br>Hearing Location: Courtroom 5A<br>Before: Hon. Roger T. Benitez |

**TABLE OF CONTENTS**

*Pages*

I.   Introduction ............................................................................................... 5
II.  Relevant Background ................................................................................. 6
III. Analysis ...................................................................................................... 7
    A.   There is a valid arbitration agreement between the parties .............. 9
    B.   The arbitration agreement encompasses this dispute...................... 11
    C.   Plaintiffs are entitled to an award of their attorneys' fees
         and costs. ........................................................................................ 13
IV.  Conclusion................................................................................................ 13

# TABLE OF AUTHORITIES

*Pages*

**Cases**

*Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770 (9th Cir. 2000) ............ 8

*Balan v. Tesla, Inc.*, 840 Fed. Appx. 303 (9th Cir. 2021) ....................................... 12

*Boardman v. Pac. Seafood Group*, 822 F.3d 1011 (9th Cir. 2016) .......................... 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........... 8

*Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236 (S.D. Cal. 2000) ............................................................................................................... 9

*Escareno v. Kindred Nursing Centers W., L.L.C.*, 366 P.3d 1016 (Ariz. Ct. App. 2016) ..................................................................................................................... 10

*Faegin v. LivingSocial, Inc.*, 2014 WL 5307186 (S.D. Cal. Oct. 15, 2014) ........... 11

*In re Lindsay*, 59 F.3d 942 (9th Cir. 1995) ............................................................... 9

*In re Sterba*, 852 F.3d 1175 (9th Cir. 2017) ............................................................. 9

*Indian Hills Holdings, LLC v. Frye*, 2021 WL 5994036 (S.D. Cal. Dec. 17, 2021) 8

*Levy v. Only Cremations for Pets, Inc.*, 57 Cal. App. 5th 203 (2020) .................... 10

*McLychok v. Diamond Resorts U.S. Collection Dev., LLC*, 2021 WL 614994 (S.D. Cal. Feb. 16, 2021) ................................................................................................... 8

*Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 542 P.2d 817 (Ariz. 1975) ..................................................................................................................... 10

*Tracer Research Corp. v. Nat'l Envtl. Services Co.*, 42 F.3d 1292 (9th Cir. 1994) 11

**Statutes**

9 U.S.C. § 2 .......................................................................................................... 8, 9

Ariz. Rev. Stat. § 12-341 ........................................................................................ 13

Ariz. Rev. Stat. § 12-341.01 ................................................................................... 13

**Other Authorities**

Restatement (Second) of Conflict of Laws § 188 (1971) ....................................... 10

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... 6, 8, 13

Fed. R. Civ. P. 54 ................................................................................................. 13

I.    Introduction

Central to the claims by Plaintiff Mark Selker ("Plaintiff") in this lawsuit are allegations that he paid for a "No-Index" service provided by Defendant Xcentric Ventures, LLC ("Xcentric").

Xcentric operates the website www.ripoffreport.com (the "Website"), on which third-party users can post reports about businesses and individuals. Similar to websites offered by Yelp! and the Better Business Bureau, the Website is essentially a consumer advocacy forum where users can review and discuss businesses. Xcentric also offers several services, including internet reputation monitoring and a service (available within certain parameters) that de-indexes certain website pages from search engines, which may limit the extent to which such pages show up on search engines (the "No-Index" service). No service offered by Xcentric includes removal of user reports from the Website. [*See* Declaration of Ed Magedson ¶¶ 3-5 (Exhibit 1 hereto).]

Plaintiff's allegations about the No-Index service are extensive. Plaintiff alleges that he paid for a No-Index service from Xcentric. [Compl. ¶ 50.] Plaintiff alleges that Xcentric's performance of services under the parties' agreement for No-Index services did not result in a report about Plaintiff being removed from the Website. [*Id.*] Plaintiff seeks to represent a putative class of California citizens that includes those who paid for de-indexing of reports on the Website. [Compl. ¶ 54.] Plaintiff alleges that there is a predominating question of whether Xcentric's requirement for payment before, inter alia, de-indexing is extortion. [Compl. ¶ 58.] The basis for one of Plaintiff's claims is an allegation that he and the putative classes have been subjected to extortion through the requirement of fees for, among other things, No-Index services. [Compl. ¶ 71.] The basis for his other claim is that Xcentric allegedly charged Plaintiff an "exorbitant" fee for a No-Index service. [Compl. ¶ 80.] Plaintiff seeks damages for the alleged fees Xcentric charged before de-indexing. [Compl. ¶ 74.]

In all of his allegations about the contours of the No-Index service and Xcentric's performance of the No-Index service, Plaintiff neglects to mention one critical fact: when he paid for the No-Index service that is the basis for his Complaint, he also agreed that disputes related to that agreement or to Xcentric's provision of the No-Index services <u>would be subject to arbitration</u>.

Federal law is clear that arbitration <u>must</u> be compelled where (1) the parties have a valid agreement to arbitrate and (2) the arbitration agreement encompasses the dispute. Both of those requirements are met here. The Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) and compel arbitration.

## II.     Relevant Background

Xcentric is an Arizona company, with its principal place of business in Arizona, that operates the Website, on which users can post reports about businesses and individuals. [Magedson Decl. ¶¶ 3-4]. Xcentric offers several services, including internet reputation monitoring and a service that de-indexes certain website pages from search engines, which may limit the extent that such pages show up on search engines; this is referred to as a "No-Index" service. [*Id.* ¶ 5.] Xcentric also offers an arbitration program, where disputes over reports can be determined by an independent arbitrator. [*Id.* ¶ 6.]

On January 25, 2022, Plaintiff approached Xcentric by email about a report about Plaintiff that had been posted by a third party on the Website. [*Id.* ¶ 7.] Plaintiff claimed that the user had submitted inaccurate information to the Website. [*Id.* ¶ 8.] In ensuing discussions between the parties, Plaintiff reached out to Xcentric in Arizona and indicated that he wanted to engage in both the arbitration program and the No-Index service. [*Id.*]

In a February 1, 2022, email (the "Offer"), Xcentric informed Plaintiff that he would need to proceed through one program at a time. [*Id.* ¶ 9.] In the Offer, Xcentric explained the timeline for the No-Index service, informed Plaintiff that

the cost of the service was $2,500, and set forth several specific terms. [*Id.* ¶ 10.] Among others, the Offer included the following term:

> **NOTICE OF ANY CLAIMS IS THRU Arbitration.** Any and all claims arising from or relating to the performance of our service, alleged breach, termination or operation of this email Agreement by Xcentric shall be subject to binding arbitration. Arbitration of claims pursuant to this email shall take place in Phoenix, Arizona before the American Arbitration Association in accordance with its Commercial Arbitration Rules, or before any other mutually agreed arbitrator or arbitral entity. The costs of arbitration, including the arbitrator's fees, shall initially be paid equally by both parties, subject to reallocation by the arbitrator's final award. The party prevailing in arbitration shall be entitled to its reasonable attorney's fees and costs as part of the award. Judgment on the arbitration award may be entered in any court having jurisdiction thereof pursuant to A.R.S. § 12-1511.

[*Id.*]

Plaintiff responded to the Offer via a February 2, 2022, email (the "Acceptance"), in which he: notified Xcentric that he had paid Xcentric $2,500 as "my payment for your NoIndex Report service," provided a bank receipt for the payment, and stated, "I am also acknowledging that I agree to the 'NoIndex Report' terms as stated in this email string." [*Id.* ¶ 11.] Xecentric followed the acceptance and payment by performing the No-Index service, and it continues to perform (the service lasts for three years). [*Id.* ¶ 12.]

The Acceptance was unequivocal: Plaintiff contracted with Xcentric to receive the No-Index service and expressly accepted Xcentric's offered terms contained in the email string, including the conspicuous and emphasized provision for arbitration. The agreement that was reached through the Offer and Acceptance is referred to as the "No-Index Agreement."

### III.   Analysis

The Federal Arbitration Act ("FAA") requires enforcement of "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle

by arbitration a controversy thereafter arising out of such contract or transaction . . . ." 9 U.S.C. § 2. "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *McLychok v. Diamond Resorts U.S. Collection Dev., LLC*, 2021 WL 614994, at *2 (S.D. Cal. Feb. 16, 2021) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Thus, on a motion to compel arbitration, the only two issues before a district court are (1) whether there is a valid agreement to arbitrate and (2) whether the agreement encompasses the dispute at issue. *Id.*; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the Act <u>requires</u> the court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130 (emphasis added).

Furthermore, "[t]here is an 'emphatic federal policy in favor of arbitral dispute resolution,' so 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *McLychok*, 2021 WL 614994, at *2 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 631 (1985)).

Procedurally, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Indian Hills Holdings, LLC v. Frye*, 2021 WL 5994036, at *5 (S.D. Cal. Dec. 17, 2021) (cleaned up). When ruling on Rule 12(b)(1) motions, the Court may consider material outside the pleadings. *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) ("For motions to dismiss under Rule 12(b)(1), . . . the moving party may submit affidavits or any other evidence properly before the court . . . ." (cleaned up)).

8
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

1   This action should be dismissed, and arbitration should be compelled, because (1) Plaintiff entered a valid arbitration agreement that (2) encompasses the dispute at issue.

### A.   There is a valid arbitration agreement between the parties.

Plaintiff agreed that "[a]ny and all claims arising from or relating to the performance of our service, alleged breach, termination or operation of [the No-Index] Agreement by Xcentric shall be subject to binding arbitration." This is a valid arbitration agreement between Plaintiff and Xcentric.

Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable" unless grounds "exist at law or in equity for [its] revocation." 9 U.S.C. § 2. Plaintiff has not contended, in the Complaint or otherwise, that the arbitration provision in the No-Index Agreement is unenforceable. Rather, Plaintiff focuses on his attempts to edit a different agreement, which the parties never agreed to.

In considering whether a valid arbitration agreement exists, courts "look to general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1018 (9th Cir. 2016) (cleaned up). Arizona law governs the No-Index Agreement. Because jurisdiction in this Court is based on a federal question, federal common-law principles of conflicts of law apply. *See, e.g.*, *In re Sterba*, 852 F.3d 1175, 1180 (9th Cir. 2017); *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995); *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1253 n.14 (S.D. Cal. 2000). "[F]ederal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws." *Sterba*, 852 F.3d at 1180. Absent a choice-of-law provision in a contract,[1] this requires determining the state with "the

---

[1] The No-Index Agreement does not contain an explicit choice of law provision, but it did reference Arizona law (A.R.S. § 12-1511), which further confirms Arizona's significant connection with the transaction and the parties.

most significant relationship to the transaction and the parties," taking into account the place of contracting; the place of negotiations; the place of performance; the location of the subject matter; and the domicil, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict of Laws § 188 (1971). Here, Arizona has the most significant relationship to the transaction and the parties: the Website (the subject matter of this lawsuit and of the No-Index Agreement) is operated from Arizona, Xcentric is an Arizona company with its principal place of business in Arizona, the de-indexing services Plaintiff received were provided from Arizona, and contracting and negotiations took place with Xcentric in Arizona and Plaintiff in California. [Magedson Decl. ¶¶ 3, 13.]

Under Arizona law, "for an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 542 P.2d 817, 819 (Ariz. 1975). "Thus, a defendant seeking to compel arbitration must show that the plaintiff accepted the arbitration agreement." *Escareno v. Kindred Nursing Centers W., L.L.C.*, 366 P.3d 1016, 1019 (Ariz. Ct. App. 2016).[2]

Here, the parties clearly formed a valid agreement to arbitrate by explicit agreement. Xcentric made an offer to perform a No-Index service (via the Offer); Plaintiff accepted the Offer (via the Acceptance) and paid $2,500. [Magedson Decl. ¶¶ 9-12.] The No-Index Agreement had sufficient specification of terms, both as to

---

[2] California law is similar. *See, e.g.*, *Levy v. Only Cremations for Pets, Inc.*, 57 Cal. App. 5th 203, 211 (2020) ("[T]he vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." (cleaned up)).

the agreement generally and as to the arbitration requirement specifically. Xcentric stated in the Offer:

> **<u>NOTICE OF ANY CLAIMS IS THRU Arbitration</u>**. Any and all claims arising from or relating to the performance of our service, alleged breach, termination or operation of this email Agreement by Xcentric shall be subject to binding arbitration. Arbitration of claims pursuant to this email shall take place in Phoenix, Arizona before the American Arbitration Association in accordance with its Commercial Arbitration Rules, or before any other mutually agreed arbitrator or arbitral entity. The costs of arbitration, including the arbitrator's fees, shall initially be paid equally by both parties, subject to reallocation by the arbitrator's final award. The party prevailing in arbitration shall be entitled to its reasonable attorney's fees and costs as part of the award. Judgment on the arbitration award may be entered in any court having jurisdiction thereof pursuant to A.R.S. § 12-1511.

[*Id.* ¶ 10.] Plaintiff responded in the Acceptance, "I am also acknowledging that I agree to the 'NoIndex Report' terms as stated in this email string." [*Id.*¶ 11.] Acceptance of the arbitration provision in the No-Index Agreement was unequivocal.

There can be no dispute that the first requirement for arbitration to be compelled—a valid agreement to arbitrate between the parties—is met.

**B.     The arbitration agreement encompasses this dispute.**

Again, the No-Index Agreement provides that "[a]ny and all claims arising from or relating to the performance of our service, alleged breach, termination or operation of this email Agreement by Xcentric shall be subject to binding arbitration." That arbitration agreement encompasses this dispute.

 "[T]he scope of [an] arbitration clause is governed by federal law." *Tracer Research Corp. v. Nat'l Envtl. Services Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). Federal law provides that the "arising from or relating to" language used in the arbitration provision must be interpreted broadly. *See, e.g.*, *Faegin v. LivingSocial, Inc.*, 2014 WL 5307186, at *3 (S.D. Cal. Oct. 15, 2014) ("A clause requiring

arbitration of any dispute 'arising from or relating to' an agreement is a broad arbitration clause."). This language is interpreted to encompass "any disputes that have 'a significant relationship to,' or at least 'some direct relationship' with" the topics listed. *Balan v. Tesla, Inc.*, 840 F. App'x 303, 304 (9th Cir. 2021). Thus, the arbitration provision here requires arbitration of all claims that have a significant or direct relationship with any of the following: performance of services under the No-Index Agreement, alleged breaches of the No-Index Agreement, termination of the No-Index Agreement, or operation of the No-Index Agreement by Xcentric.

The Complaint's allegations establish that Plaintiff's claims fall within this scope:

- Plaintiff alleges he paid for a No-Index service, but the report underlying the Complaint "was allowed to remain" on the Website [Compl. ¶ 50];
- Plaintiff purports to represent a putative class defined to include "[a]ll California citizens who have had a RIPOFF Report issued about him/her/it/them who have paid any monies in an attempt to have the Report . . . de-indexed" [Compl. ¶ 54];
- Plaintiff alleges, as basis for the First Cause of Action, that he and the putative classes have been subject to extortion through the requirement of fees for, inter alia, No-Index services [Compl. ¶ 71];
- Plaintiff (on behalf of himself and the putative classes) seeks damages owed "as a result of Defendants' imposition of extortionist fees and costs before consideration of removal, redaction, and/or de-indexing Reports" [Compl. ¶ 74]; and
- Plaintiff alleges, as a basis for the Second Cause of Action, that Xcentric charged Plaintiff an "exorbitant" fee for a No-Index service. [Compl. ¶ 80].

Plaintiff's claims have a significant or direct relationship with both (a) performance of services under the No-Index Agreement and (b) operation of the No-Index Agreement. They thus are encompassed by the arbitration provision in the No-Index Agreement.

### C. Plaintiffs are entitled to an award of their attorneys' fees and costs.

Out of an abundance of caution, Xcentric notes here that it is entitled to its attorneys' fees and costs under Arizona law if and when the Court dismisses this matter under Rule 12(b)(1). Because this matter arises out of contract, Xcentric is entitled to recover its reasonable attorneys' fees under Ariz. Rev. Stat. § 12-341.01(A), and its costs under Ariz. Rev. Stat. § 12-341. If successful on this Motion, Xcentric will submit a motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54.

### IV. Conclusion

Both requirements for compelling arbitration are met: (1) there is a valid arbitration agreement between the parties, and (2) it encompasses this dispute. Under the FAA, this means arbitration shall be compelled. For these reasons, the Court should dismiss this case and compel arbitration.

DATED this 31st day of March, 2022.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

*s/ Bennett Evan Cooper*
Bennett Evan Cooper
Bradley A. Burns
Amanda E. Newman
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004

Attorneys for Defendant
Xcentric Ventures, LLC

COPY of the foregoing served via the ECF system
this 31st day of March, 2022, on the following:

13

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION

Jeffrey L. Hogue
Tyler J. Belong
Jimmie D. Parker
Mark A. Simpliciano
**HOGUE & BELONG**
170 Laurel Street
San Diego, CA 92101
jhogue@hoguebelonglaw.com
tbelong@hoguebelonglaw.com
jparker@hoguebelonglaw.com
msimpliciano@hoguebelonglaw.com
*Attorneys for Plaintiff*

s/ Nicole Francini

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION