# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SELKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC; and DOES 1 through 300, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-00393-BEN-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO REMAND AND GRANTING-IN-PART PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES; and**<br><br>**(2) DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**<br><br>**[ECF Nos. 2, 6]** |

-1-

# I.   <u>INTRODUCTION</u>

Plaintiff Mark Selker, individually and on behalf of all others similarly situated brings this action against Defendant Xcentric Ventures, LLC, doing business as Ripoff Report for violations of California law.  Before the Court is: (1) Plaintiff's Motion to Remand and Request for Attorneys' Fees; and (2) Defendant's Motion to Dismiss and Compel Arbitration.  The Motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF Nos. 9, 12.  After considering the papers submitted, supporting documentation, and applicable law, the Court: (1) **GRANTS** Plaintiff's Motion to Remand and **GRANTS-IN-PART** Plaintiff's Request for Attorneys' Fees; and (2) **DENIES** as moot Defendant's Motion to Dismiss and Compel Arbitration.

# II.   <u>BACKGROUND</u>

This case arises from a negative review of Plaintiff's business, posted by an anonymous third-party, on a website run by Defendant.

## A.   <u>Statement of Relevant Facts</u>

Plaintiff is a citizen and resident of San Diego County and the state of California. ECF No. 1-2 ("Compl.") at 3, ¶ 8.[1]  Plaintiff runs a fine art business.  *Id.* at 10, ¶ 45. Defendant is a resident of both Arizona and Nevada.  *See id.* at 4, ¶¶ 9–10.  Defendant runs a website called Ripoff Report ("Ripoff"), "where users can submit negative reviews online about persons or businesses . . . ."  *Id.* at 4, ¶ 9; 5, ¶ 18.  The reviews/complaints are considered "Reports."  *Id.* at 5, ¶¶ 18–19.  Ripoff requires users to create an account before posting a Report but "does not verify the identity of the users, and users can submit reports 'anonymously,' or under a fake name."  *Id.* at 5, ¶ 19.  Ripoff's "reports frequently appear on popular search engines, like www.google.com, when certain key terms are used."  *Id.* at 6, ¶ 22.

---

[1]   Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

Ripoff has terms of service that limit or prohibit certain subject matter in Reports. *Id.* at 6, ¶ 21.  Users cannot "post anything with the sole intention to harass or bully any particular individual, including but not limited to content that may be perceived as cyberharassment, cyberstalking, cyberbullying, or unclassified form of revenge post."  *Id.* (internal quotation marks omitted).  "Ripoff also reserves the right to remove private personal information, and unsubstantiated allegations of serious criminal acts."  *Id.* However, "[n]o matter the circumstances, once a Report is submitted, R[ipoff] will not take it down" and instead, "only offers the victim – the subject of the Report – an opportunity to submit a rebuttal refuting all or a portion" thereof.  *Id.* at 6, ¶ 23.  By refusing to remove Reports, Ripoff "extorts money from the victims of false Reports by requiring them to pay exorbitant penalty payments . . . ."  *Id.*

Ripoff "promotes a so-called 'VIP Arbitration Program' to mitigate the impact of a Report," and "VIP stands for 'Voluntary, Impartial, and Private.'"  *Id.* at 6, ¶ 24.  Ripoff charges a non-refundable $2,000.00, per challenged Report, to initiate the VIP Arbitration Program—Ripoff receives $1,000.00 and the arbitrator receives $1,000.00.  *Id.* at 6, ¶ 25. There is also a nonrefundable $250.00 "fee for each additional comment resulting from that Report."  *Id.*  The full cost must be paid "before the VIP Arbitration Program can commence."  *Id.*  "If the author of the Report defaults, does not respond, or the complainant's evidence refuting the validity of the Report goes unchallenged, no portion of the $2,000 fee is reimbursed."  *Id.*  The victim must also sign a standard form entitled "Ripoff Report VIP Arbitration Agreement" (the "Agreement").  *Id.* at 6–7, ¶ 26.  By signing, the victim agrees to arbitration, and (among other things) agrees not to challenge the Agreement as a contract of adhesion or violative of any consumer protection or similar laws . . . ."  *Id.* at 7, ¶ 26.  The Agreement also contains a choice of law and forum selection clause, both of which name the state of Arizona.  *Id.*  Ripoff "appoints the arbitrator in its sole discretion, and assigns 'cases to Arbitrators in Ripoff Report's pool of professional Arbitrators,'" and "prohibits the victim from making any contact with the Arbitrator."  *Id.* at 7, ¶ 27.  Ripoff also has additional fees that people and businesses can pay in exchange

-3-

for Ripoff's promise that it will mitigate the impact of a negative review. *Id.* at 7–8, ¶ 32.

"On October 17, 2017, an individual by the name of 'boba' from Encinitas posted [an anonymous] [] Report about Plaintiff and Plaintiff's business." *Id.* at 8–9, ¶ 36. The Report states:

> Mark Selker rents a rooms [sic] a large home in Cielo Estates in Rancho Santa Fe, California and I was his landlord. He operates an art business called Mark Selker Fine Art and also is an aspiring movie maker. While in my home he caused a lot of problems with the other tenants making up stories about the home and causining [sic] genral [sic] unharmony in the household. Since he paid his rent on time I overlooked the problems but he was given notice immediately upon revealing that he had been accused of improper filming of a child during a recent relationship. This was information that he offered on his own and immediately regretted backtracking his story.

*Id.* at 9, ¶ 37. The author of the Report also provided a link to Plaintiff's business website and placed the report under the "Questionable Activities" and "Sex Offender" categories. *Id.* at 9, ¶ 38, 41. "Plaintiff does not know a 'boba,' and never rented a room, a residence, or had a landlord by the name of a 'boba' or anything similar sounding . . . ." *Id.* at 9, ¶ 42. Plaintiff alleges the Report insinuated that he "may have committed a crime against a minor, which was defamatory, false, and made with malice." *Id.* at 9, ¶ 40. Plaintiff also alleges that "the Report was made solely for purposes of harassment and perceived cyberharassment, cyberstalking, and a form of a 'revenge post.'" *Id.*

Plaintiff alleges a number of harms that occurred after the Report was posted and as a result of the report, including but not limited to: (1) issues entering into leases with prospective tenants who were interested in renting rooms at the Rancho Sante Fe home he was residing in; (2) a decline in business sales to the point where Plaintiff was forced to change the name of his business and setup a new website and email; (3) the termination of his role at Alpha Strategem (a company that helps businesses increase sales and online presence), as well as a 28 percent reduction in his equity position there; and (4) issues in his personal life, especially with persons he met after the Report was posted. *Id.* at 9–10,

-4-

¶¶ 44–48.  "When Plaintiff used certain search terms using his name, the Report would always appear as the very first result in popular search engines."  *Id.* at 10, ¶ 48.

Plaintiff attempted to get the Report removed, but Ripoff demanded that he pay a fee and sign the Arbitration Agreement, or "pay for a service entitled 'NoIndex' at a cost of $5,500 to 'de-index' his Report from online search engines."  *Id.* at 49, ¶ 10.  On January 22, 2018, Plaintiff's attorney requested Ripoff to remove the "Sex Offender" category.  *Id.* at 9, ¶ 43.  Around January and February 2022, Ripoff offered the NoIndex service to Plaintiff for a discounted fee of $2,500.00.  *Id.* at 10, ¶ 50.  Plaintiff paid the fee and although the Report was de-indexed, it "was allowed to remain on R[ipoff]'s website."  *Id.* Because the only way to remove the Report was to join in the VIP Arbitration Program, Plaintiff wanted to participate.  *Id.* at 10, ¶ 51.  Ripoff required that Plaintiff sign the Arbitration Agreement before initiating the VIP process to clear his name.  *Id.* at 11, ¶ 52. When Plaintiff attempted to strike out certain onerous or unconscionable terms, Ripoff "would not permit any negotiation of its Arbitration Agreement, forcing Plaintiff to sign a 'take-it or leave-it' contract instead."  *Id.*  Not wanting to be bound by the terms, Plaintiff did not sign the Agreement.  *Id.*  Plaintiff alleges that he "continues to be harmed to this day" and makes numerous class allegations.  *Id.* at 11–14, ¶¶ 53–68.

### B.   Procedural History

Plaintiff initially filed his Class Action Complaint for Damages in the Superior Court of California, County of San Diego, alleging: (1) Unfair Business Practices in violation of Business and Professions Code §§ 17200, *et seq.*; and (2) Breach of the Implied Covenant of Good Faith and Fair Dealing.  *See* Compl.  Defendant removed the case to this Court on March 24, 2022, on the basis of federal question jurisdiction, arguing that Plaintiff's state law claims are completely preempted by the Communications Decency Act, 47 U.S.C. § 230(c)(1).  ECF No. 1 ("NOR") at 2–3.  Shortly thereafter, Defendant filed the instant Motion to Dismiss and Compel Arbitration.  ECF No. 2.  Plaintiff subsequently filed the instant Motion to Remand.  ECF No. 6 ("Motion").  Defendant timely filed an Opposition and Plaintiff replied.  ECF No. 10 ("Oppo."); ECF No. 11 ("Reply").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, federal subject matter jurisdiction exists due to the presence of a federal question, or complete diversity between the parties. *See* 28 U.S.C. §§ 1331–1332. While a plaintiff is the master of his or her complaint and may choose where to file suit, removal qualifies as "an important check on the plaintiff's mastery." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). When a plaintiff files a civil action in state court, a defendant in that case may remove it to federal court so long as the case could have originally been filed in federal court, either due to the existence of a federal question or diversity jurisdiction. *See* 28 U.S.C. § 1441(a); *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).

"The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990)).

### IV.   **DISCUSSION**

Plaintiff argues the case should be remanded because there is no federal question jurisdiction as set forth in Defendant's Notice of Removal. Defendant responds that federal question jurisdiction exists through the artful pleading doctrine, and that diversity jurisdiction forms a second basis for removal. Plaintiff replies that Defendant did not originally remove the case based on diversity jurisdiction, nor did it amend its Notice of Removal. Plaintiff further argues that Defendant failed to establish that the amount in

-6-

controversy exceeds $75,000.00.  Plaintiff also moves for attorneys' fees pursuant to 28 U.S.C. § 1447(c).  As set forth below, the Court agrees with Plaintiff and **REMANDS** the case to state court.  As such, Defendant's Motion to Dismiss and Compel Arbitration is **DENIED** as moot.

### A.  <u>Motion to Remand</u>

The Supreme Court has long held that "'[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474–75 (1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 3920 (1987)).  This is true even if a federal defense is anticipated in the complaint, and "if both parties admit that the defense is the only question truly at issue in the case." *Rivet*, 522 U.S. at 475 (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983)).  However, the artful pleading doctrine serves as an exception to the well-pleaded complaint rule and "allows removal where federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475 (citations omitted).  The Supreme Court has also, in rare circumstances, found that certain cases arise under federal law in a sufficient matter to confer federal jurisdiction. *See Gunn v. Minton*, 568 U.S. 251, 257–58 (2013).  As set forth below, neither exception applies here.

### i.  **Complete Preemption**

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 24).  However, federal law must completely preempt the state law claim—a defense of preemption is insufficient. *Id.*; *see also Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000) (citing *Caterpillar*, 482 U.S. at 393) ("[T]he 'complete preemption' doctrine does not abrogate the standard rule that a defense of preemption does not create federal question jurisdiction.").

-7-

Defendant's Notice of Removal argues that the Communications Decency Act (the "CDA") "completely preempts the claims brought by Plaintiff here." NOR at 3. In support of its contention, Defendant cites the CDA itself and *Murphy v. Twitter*, 60 Cal. App. 5th 12, 24 (2021). But Defendant misstates the law. First, Defendant quotes 47 U.S.C. § 230(e)(3) of the CDA, which states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." However, the first sentence of § 230(e)(3) reads that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." Although there is a potential for ordinary, conflict preemption, the explicit language of the statute establishes that Congress did not intend the CDA to completely preempt state law. *See also Zeran v. Am. Online, Inc.*, 958 F. Supp. 1124, 1131 (E.D. Va.), *aff'd*, 129 F.3d 327 (4th Cir. 1997) ("[The CDA] does not reflect congressional intent to preempt state law remedies for defamatory material on an interactive computer service. To the contrary, § 230(d)(3) reflects Congress' clear and unambiguous intent to retain state law remedies except in the event of a conflict between those remedies and the CDA."); *Cisneros v. Sanchez*, 403 F. Supp. 2d 588, 593 (S.D. Tex. 2005) ("Any preemptive effect the CDA may have only rises to the level of a defense to certain causes of action, which is insufficient to support removal jurisdiction."); *A.R.K. v. La Petite Acad.*, No. SA-18-CV-294-XR, 2018 WL 2059531, at *1 (W.D. Tex. May 2, 2018) (holding that the CDA does not completely preempt state law and explaining that "[b]ecause the CDA provides only an affirmative defense to liability, it does not provide a basis for removal jurisdiction."); *Leviston v. Jackson*, No. 15 CIV. 4563 KPF, 2015 WL 3657173, at *3 (S.D.N.Y. June 12, 2015) ("Defendant's argument for removal on the basis that the CDA preempts Plaintiff's claims thus requires Defendant to demonstrate that Section 230 of the CDA preempts state law entirely within its field. It does not."); *R.L. Lackner, Inc. v. Sanchez*, No. CIV.A. B-05-264, 2005 WL 3359356, at *3 (S.D. Tex. Dec. 9, 2005) ("The CDA does not completely preempt the field of law governing communications over the Internet and state law claims for allegedly defamatory statements are available without giving rise to federal

1 jurisdiction.").

2       Second, Defendant's contention that *Murphy v. Twitter* recognized a complete

3 preemption of Plaintiff's state law claims in this case is misleading. *See* 60 Cal. App. 5th

4 12, 24 (2021). *Murphy* cited the language of § 230(e)(3) that state laws must be consistent

5 with the CDA but does not hold that the CDA completely preempts state law. *Id.* at 24. In

6 addition, *Murphy* is a California appellate decision that reviews an order granting a

7 demurrer in favor of the defendant. The case did not involve a motion to remand, nor did

8 it apply the federal standards required to permit federal question jurisdiction. Instead,

9 *Murphy* focused on the CDA as an affirmative defense, which is not a basis for removal to

10 federal court. *See id.* at 35. As such, the Court disregards *Murphy* as inapplicable to the

11 instant case. The other cases cited in Defendant's Opposition are likewise inapplicable

12 because the analysis of the CDA is not made in the context of complete preemption for

13 purposes of remand. Instead, the issues center on CDA immunity being asserted as a

14 defense in the context of a motion to dismiss and motion for summary judgment. *See*

15 *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009), *as amended* (Sept. 28, 2009);

16 *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).

17       The complete preemption exception to the well-pleaded complaint rule is narrow

18 and because it is clear that the CDA does not completely preempt state law, the exception

19 does not apply. Defendant's remaining arguments frame its CDA preemption as a defense

20 from suit.[2] However, as set forth in *Caterpillar Inc. v. Williams*:

22       [I]t is now settled law that a case may *not* be removed to federal court on the
23       basis of a federal defense, including the defense of pre-emption, even if the
24       defense is anticipated in the plaintiff's complaint, and even if both parties
         concede that the federal defense is the only question truly at issue.

───────────────

27 [2]      Because a preemption defense does not apply in the context of a motion to remand,
28 the Court declines to address the parties' arguments for partial or conflict preemption.

-9-

482 U.S. at 393 (citing *Franchise Tax Board*, 463 U.S. at 12).  Because Plaintiff's claim is not completely preempted by the CDA, the court lacks federal question jurisdiction.  *Cf. Olin Corp. v. United Enterprises, Ltd.*, No. 04-cv-02559-BEN-POR, 2005 WL 8173032, at *2 (S.D. Cal. Apr. 12, 2005) (finding no federal question jurisdiction and stating, "[s]imply put, Plaintiff has alleged only state law claims in its Complaint in an area of law that has not been completely preempted by [the] federal [Comprehensive Environmental Response, Compensation, and Liability Act] [] and are not necessarily federal in character.  Moreover, the removal statutes are strictly construed against removal and uncertainties are resolved in favor of remanding").  Accordingly, the Court cannot find federal jurisdiction on the basis of complete preemption.

### ii.  Arising Under Jurisdiction

Another exception to the well-pleaded complaint rule allows "federal jurisdiction over a state law claim . . . if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258 (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).  If all requirements are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313–14).  However, this "arising under jurisdiction" includes only "special and small category" of cases.  *See Gunn*, 568 U.S. at 258 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

Although Defendant hints that Plaintiff necessarily raises a federal issue through his state law claims, Defendant does not cite or argue the *Grable* factors.  The burden is on Defendant to establish that remand is proper, and the Court will not supply arguments[3] for

---

[3]     Even if Defendant had argued *Grable*, the Court finds it unlikely that this case would be one of those rare exceptions.  Plaintiff's UCL claim is for unfair business practices and

Defendant to defeat Plaintiff's Motion. Plaintiff's state law claims may implicate certain aspects of the CDA with respect to the Report but again, if any immunity or partial preemption defenses are available,[4] those defenses cannot be asserted as bases for removal. Without any analysis to *Grable* from Defendant, Defendant has not met its burden of proving an exception to the well-pleaded complaint rule for purposes of remand, and the Court cannot find federal question jurisdiction.

### iii.    Diversity Jurisdiction

Defendant argues that diversity jurisdiction provides an alternative basis for this Court to deny Plaintiff's Motion to Remand.  Plaintiff responds that Defendant's assertion of diversity jurisdiction is untimely, and that Defendant failed to meet its burden of proving diversity jurisdiction.  The Court agrees.

### 1.    *Timeliness*

In its Notice of Removal, Defendant stated that it "cannot determine at this time whether this case may be removed . . . under 28 U.S.C. § 1441 and this Court's diversity jurisdiction."  NOR at 3.  Defendant noted that the requirement for complete diversity of

---

focuses on Defendant's alleged extortion of Plaintiff.  The crux of the claim is that Defendant's business practices are unfair, unlawful, or fraudulent, because Defendant failed to deliver on its promise as set forth in its own terms of use.  Plaintiff's Complaint indicates that the Report about Plaintiff and his business was a revenge post, which is prohibited by Defendant's terms of use.  Plaintiff's second claim for breach of the implied covenant of good faith and fair dealing also focuses on Defendant's alleged violation of its terms of use, including Defendant's failure to act in good faith through extortion efforts. Although Plaintiff provides several additional factual allegations about Defendant's business practices, the inclusion of many of these allegations serve to provide the Court with background and context.  The state law claims at issue, however, place less emphasis on information in the review and more emphasis on Defendant's alleged failure to honor the terms of use it created.  There is no indication that the case can be resolved without disrupting the federal-state balance approved by Congress.

[4]    The Court makes no findings on the merits of Defendant's preemption defense—the CDA does not completely preempt state law claims, making any potential partial or conflict preemption irrelevant for purposes of Plaintiff's Motion to Remand.

-11-

citizenship is met because the parties reside in different states—Plaintiff being in California and Defendant being in Nevada and Arizona.  *Id.*  However, Defendant asserted that "the amount in controversy is unclear from the face of the Complaint" and as a result, "removal under 28 U.S.C. § 1441 is not appropriate at this time."  *Id.* at 3–4.  Defendant did, however, state that it "reserves all rights to remove under . . . § 1441 if and when it becomes apparent that the amount in controversy exceeds $75,000."  *Id.* at 4.

Defendant's Opposition now argues that the amount in controversy exceeds $75,000.00.  Oppo. at 11.  First, Defendant states that Plaintiff should supply Defendant with the total amount he seeks, or that the Court should urge Plaintiff to do so.  *Id.*  Second, Defendant recites certain allegations in the Complaint respecting the harm to Plaintiff, including: (1) Plaintiff's difficulty in obtaining new tenants to rent from him; (2) Plaintiff's unexpected decline in business sales; (3) that Plaintiff's business suffered so much he was forced to change the name; (4) Plaintiff's role at Alpha Strategem was terminated and his equity position was reduced; and (5) that Plaintiff's personal relationships suffered; and (6) that Plaintiff eventually had to stop using his last name.  Oppo. at 12.  After restating these allegations, Defendant makes the conclusory assertion that "[i]t should be clear that, collectively, those alleged damages exceed this Court's jurisdictional threshold for the amount in controversy."  *Id.* at 13.  Finally, Defendant requests jurisdictional discovery. *Id.*  Defendant's arguments are flawed.

As an initial matter, Defendant did not state diversity jurisdiction as a basis to remove the case in its Notice of Removal.  In fact, it stated that diversity jurisdiction was inappropriate at that time.  The Complaint has not been amended since the original Notice of Removal was filed.  Defendant could have made the same arguments it makes here at the time it filed its Notice of Removal, but it declined to do so.  In addition, Defendant never filed a motion to amend its Notice of Removal to include diversity jurisdiction as a basis and does not ask for leave to amend here.  By not including these arguments in its Notice of Removal—or making a timely motion to amend—Defendant waived any argument it had for diversity jurisdiction.  On this basis alone, the Court can reject

Defendant's assertion of diversity jurisdiction.

The Ninth Circuit has, on occasion, construed an opposition to a motion to remand as an amendment to a notice of removal.  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).  However, pursuant to 28 U.S.C. § 1446, the defendant has only thirty-days from service of summons to effectuate removal.  "The Ninth Circuit has made clear 'the removal petition cannot be thereafter amended to add allegations of substance but solely to clarify "defective" allegations of jurisdiction previously made.'"  *Evers v. La-Z-Boy Inc.*, No. 21-cv-02100-LL-BLM, 2022 WL 2966301, at *4 (S.D. Cal. July 27, 2022) (quoting *Barrow Development Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969)).  Here, Defendant does not seek to cure a defective notice of removal with amended assertions of the amount in controversy.  Instead, Defendant attempts—for the first time— to assert that the amount in controversy exceeds $75,000.00.  Because Defendant did not originally assert diversity jurisdiction or any amount in controversy in its Notice of Removal, the supposed amendment would claim an entirely new ground for removal.  This is especially true seeing that Defendant's only argument here centers on the same allegations in the Complaint that were available at the time the Notice of Removal was filed.  Accordingly, the Court finds Defendant waived any right to assert diversity jurisdiction by failing to effectively preserve that right in its Notice of Removal.[5]  Finally, as set forth below, even if assertions in Defendant's Opposition were to be construed as

---

[5]    Defendant's statement that it preserved the right to assert diversity jurisdiction is of no avail.  The Notice of Removal states that Defendant "reserves all rights to remove under 28 U.S.C. § 1441 if and when it becomes apparent that the amount in controversy exceeds $75,000." NOR at 3–4.  However, Defendant's Opposition bases its argument for diversity jurisdiction on allegations in the Complaint that were available to Defendant at the time it filed its Notice of Removal.  Defendant fails to state when it became apparent that the amount in controversy exceeded $75,000.00, or that anything changed between the filing of the Notice of Removal and the filing of the Opposition to Plaintiff's Motion to Remand.  As such, even if the Court were to find Defendant's reservation of rights to be appropriate—which it does not—Defendant's own language limited the circumstances under which Defendant could assert those rights.

amendments to its Notice of Removal, the Court would remain unpersuaded.

### 2.   *Amount in Controversy*

When "the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $[75],000." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997)).   Although the Notice of Removal requires only "a short and plain statement of the grounds for removal," *see* 28 U.S.C. § 1446(a), the standard changes once removal is challenged or questioned.   "If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval ... is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold."   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).   The Supreme Court explained:

> This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.

*Id.*   Because Defendant never asserted diversity jurisdiction as grounds for removal and never moved to amend its Notice of Removal to add this ground, Plaintiff was not on notice that Defendant would argue for diversity jurisdiction in its Opposition to Plaintiff's Motion to Remand.   Even so, once Plaintiff challenged Defendant's assertion of jurisdiction, Defendant should have responded with something other than conclusory assertions, given that it did not originally claim diversity jurisdiction.   Plaintiff's official challenge to Defendant's diversity jurisdiction was made in Plaintiff's Reply based on Defendant's untimely assertion.   But Defendant could have moved the Court to supplement the record or made some attempt to provide evidence of the amount in controversy.   Instead,

Defendant relies solely on conclusory allegations made in its Opposition.  Defendant fails to provide even sound reasoning or logic to aid the Court in concluding that the threshold requirement has been met, let alone evidence.  *Cf. Dart*, 574 U.S. at 89 ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").  Defendant simply regurgitates allegations of harm lodged in Plaintiff's Complaint and essentially, expects the Court to figure it out.[6]  Given the strong presumption against removal, the Court cannot find diversity jurisdiction here, where Defendant failed to meet its burden of proof.  *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773–74 (9th Cir. 2017) (quoting *Moore-Thomas*, 553 F.3d at 1244) ("This burden is particularly stringent for removing defendants because '[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'").

With respect to jurisdictional discovery, Defendant has given the Court no reason to grant this request.  First, as noted above, Defendant waived any assertion of diversity jurisdiction foreclosing the option for discovery into the issue.  Second, overlooking Defendant's procedural mishaps, Defendant makes only a conclusory statement that the Court should permit jurisdictional discovery but sets forth no specific arguments as to what it hopes to discover.  Defendant's vague recitations of Plaintiff's harm do not suffice.  For this reason alone, the Court can deny Defendant's request.  *Cf. AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213 (9th Cir. 2020), *cert. denied*, 211 L. Ed. 2d 13, 142 S. Ct. 76 (2021) (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)) (stating in its analysis regarding jurisdictional discovery that the Court "rel[ies] on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties

---

[6]   There are no general calculations or estimates indicating that the amount in controversy exceeds $75,000.00, nor is there even a sum alleged.  Defendant simply instructs the Court that the amount is in excess of $75,000.00.  That is not how removal works.  Once challenged, the burden is on Defendant to prove that jurisdiction is proper.

present.").  Furthermore, "[j]urisdictional discovery should be permitted 'where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Burri L. PA v. Skurla*, 35 F.4th 1207, 1217–18 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)).

Here, there are no facts to controvert, because Defendant provided no substantive arguments that the amount in controversy exceeds $75,000.00.  It is not the Court's job to guess.  Accordingly, the Court exercises its discretion and **DENIES** Defendant's request for jurisdictional discovery.  *See Boschetto*, 539 F.3d at 1020 (holding it was not an abuse of discretion to deny jurisdictional discovery when the request "was based on little more than a hunch that it might yield jurisdictionally relevant facts . . . ."); *Strojnik v. California through Bonta*, No. 22-cv-01088-TWR-AGS, 2022 WL 11965282, at *3 (S.D. Cal. Oct. 20, 2022) ("In the Ninth Circuit, however, whether to allow jurisdictional discovery is committed to the district court's discretion, and such discovery is not required unless [Plaintiff] will suffer 'actual and substantial prejudice.'") (citations omitted); *Elasali v. Sun Diego*, No. 07-cv-02272-W-JMA, 2008 WL 11336731, at *2 (S.D. Cal. July 3, 2008) ("The Court also denies Plaintiff's request for jurisdictional discovery because Plaintiff does not specify what type of information he needs from Defendant in order to establish that diversity jurisdiction exists."); *cf. Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 692 (9th Cir. 2006) (holding the district court did not err in declining a request for jurisdictional discovery, explaining in the context of CAFA that "any decision regarding jurisdictional discovery is a discretionary one, and is governed by existing principles regarding post-removal jurisdictional discovery, including the disinclination to entertain 'substantial, burdensome discovery on jurisdictional issues.'"); *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding a party's stated belief that discovery would yield facts supporting jurisdiction was insufficient and speculative in the context of personal jurisdiction).  Because the Defendant has failed to establish federal jurisdiction, Plaintiff's Motion to Remand is **GRANTED**.

1

###### iv.   Attorneys' Fees

Plaintiff requests that the Court award attorneys' fees in the amount of $21,387.50 pursuant to 28 U.S.C. § 1447(c).  Defendant argues that here, attorneys' fees are not appropriate but makes no arguments respecting the reasonableness of Plaintiff's requested sum.  The Court **GRANTS-IN-PART** Plaintiff's request for fees.

###### 1.   *An Award of Fees is Appropriate Under § 1447(c)*

Plaintiff argues that Defendant lacked any reasonable basis to believe that the CDA completely preempted state law.  Motion at 14–15.  Defendant argues that no Ninth Circuit or Supreme Court precedent addresses whether the CDA completely preempts Plaintiff's state law claim and therefore, Defendant had a reasonable basis to remove the case.  Oppo. at 13–14.  Defendant again cites *Murphy*,[7] and attempts to distinguish *A.R.K v. La Petite Academy* (cited by Plaintiff) arguing that there, the Court relied on Fifth Circuit precedent and sanctions were based on the defendant's lack of diligence.  *Id.* at 15–16 (citing *A.R.K.*, No. SA-18-CV-294-XR, 2018 WL 2059531, at *3–4).  Defendant contends that here, "there is no evidence that [] [it] failed to exercise diligence, or otherwise acted in bad faith, with its removal."  Oppo. at 16.  The Court agrees with Plaintiff.

As an initial matter, "good or bad faith is not an issue under the fee shifting statute," 28 U.S.C. § 1447(c), as amended.  *Olin Corp.*, No. 04-cv-02559-BEN-POR, 2005 WL 8173032, at *2 (citing *Desmond v. BankAmerica Corp.*, 120 F. Supp. 2d 1201, 1204 (N.D. Ca. 2000)).  In addition, although the Ninth Circuit has not directly stated that the CDA does not completely preempt state law claims, the statutory language leaves no question as to Congress' intended scope of preemption.  Section 230(e)(3) of the CDA reads that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section."  47 U.S.C. § 230(e)(3).  *Cf. Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) ("[W]hen Congress has made its intent known through explicit

---

[7]   As previously discussed, *Murphy* does not support Defendant's contention that the CDA completely preempts Plaintiff's state law claims.  *See supra* Part IV.A.i.

statutory language, the courts' task is an easy one.")

In addition, both the Ninth Circuit and Supreme Court have made clear that complete preemption applies only when the statutory scheme supplants state law entirely. *See Caterpillar*, 482 U.S. at 393–94; *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014). The statutory language of § 230(e)(3) forecloses the possibility of complete preemption. As such, there was no objectively reasonable basis for Defendant's to remove the case based on complete preemption by the CDA. Any other preemption defense is not a basis for removal. *Caterpillar*, 482 U.S. at 393 (explaining how it is settled law that a case cannot be removed to federal court on the basis of a preemption defense). In addition, Defendant waived any right to remove the case based on diversity jurisdiction by not including this ground in its Notice of Removal and failing to amend the Notice. Defendant also fails to provide any reasonable inference that the amount in controversy exceeds $75,000.00 and bases its assertion of diversity jurisdiction on allegations in the Complaint that were alleged at the time Defendant filed its original Notice of Removal. As such, Defendant did lack due diligence in asserting both complete preemption and diversity jurisdiction as grounds for removal. Accordingly, the Court finds an award of attorney fees appropriate in this matter.

## 2. *Amount of Attorneys' Fees*

District courts have wide discretion in awarding attorneys' fees under § 1447(c). *Balcorta*, 208 F.3d at 1106 (quoting *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992)) ("Given the wide discretion provided the district court by § 1447(c), we will review an award of attorney's fees under this statute for abuse of discretion."). In awarding fees, courts apply the "lodestar" method. *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363. To determine whether fees are reasonable, "courts look to the prevailing market rates in the community in which the court sits." *Carrillo Prop. Invs.,*

*LLC v. Robinson*, No. 3:17-cv-02003-BEN-NLS, 2018 WL 2128659, at *1 (S.D. Cal. May 8, 2018) (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) and *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)).

Plaintiff seeks $21,387.50 total for its Motion to Remand.  Plaintiff's original Motion sought $12,437.50.  Plaintiff asserts that attorney Jeffrey L. Hogue worked at an hourly rate of $725.00 and spent 15.2 hours on the Motion, billing a total of $11,020.00.[8] *See* Declaration of Tyler J. Belong, ECF No. 6-2 ("Belong Decl. I") at 2.  Plaintiff's Reply requests an additional $8,950.00, bringing the total fee request to $21,387.50.  *See* Declaration of Tyler J. Belong in Support of Plaintiff's Reply, ECF No. 11-1 ("Belong Decl. II").  Plaintiff asserts that Mr. Belong billed at an hourly rate of $725.00 and spent 10.2 hours on the briefing.  Plaintiff further states that Mr. Hogue billed at an hourly rate of $725.00 and spent roughly four additional hours on the Reply.  *Compare* Belong Decl. I (stating Mr. Hogue spent 15.2 hours on the Motion to Remand) *with* Belong Decl. II (stating Mr. Hogue spent 19.3 hours total on the Motion to Remand and then revising the Reply in this matter).  Essentially, Plaintiff's attorneys spent a total of 29.5 hours on the Motion to Remand (including the Reply) at an hourly rate of $725.00.  Defendant argues that an award of fees in inappropriate but does not challenge the hourly rate or total hours expended as unreasonable.

Despite Defendant's lack of argument as to reasonableness and the Court's broad discretion to award fees in this instance, § 1447(c) indicates that any fee award must be "just."  *See also Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 134, 138 (2005).  Whether an award of fees is "just" is determined by the objectively reasonable standard analyzed above.  However, the amount of fees must also be reasonable.  The Court finds the sum of

---

[8]     Mr. Belong's original declaration also asserted that Jimmie D. Parker worked an hourly rate of $675.00 and spent 2.1 hours on the Motion, billing a total of $1,417.50.  Belong Decl. I at 2.  However, this amount is not included in Mr. Belong's subsequent declaration supporting Plaintiff's Reply and therefore, is not addressed.

-19-

$21,387.50 excessive in this case.

The declarations state that Mr. Belong is a partner at the firm, while indicating that Mr. Hogue is a partner as well, given the firm name Hogue & Belong. *See* Belong Decl. I at 2; Belong Decl. II at 2. Mr. Belong's initial declaration also states that Mr. Hogue was admitted to the bar in 2004, implying roughly nineteen years of experience as an attorney. *See* Belong Decl I. at 2. The Court questions whether Plaintiff's counsel provided sufficient support for its declared $725.00 rate. Because the parties did not include prevailing market rates for attorneys, the Court looks to cases in this district.

In the context of fees awarded under § 1447(c) in this district, the Court finds $725.00 per hour above what is typical in the market. *See Carrillo*, No. 3:17-cv-02003-BEN-NLS, 2018 WL 2128659, at *1–2 (finding an hourly rate of $295.00 reasonable for a seven year attorney and a rate of $350.00 reasonable for a nine year attorney); *Doe by & through Ikerd-Schreiter v. Mater Dei Cath. High Sch. of San Diego, Inc.*, No. 18-cv-01997-CAB-NLS, 2018 WL 4403949, at *2 (S.D. Cal. Sept. 17, 2018) (finding an hourly rate of $350.00 reasonable); *Silverman v. Silverman*, No. 15-cv-02108-AJB-BLM, 2016 WL 10894424, at *16 (S.D. Cal. Jan. 14, 2016), *aff'd*, 703 F. App'x 596 (9th Cir. 2017) (finding a rate of $450.00 reasonable for an attorney with thirty-three years of experience and a rate of $300.00 reasonable for a less seasoned attorney); *Murfey v. Spiders Aircraft Serv., Inc.*, No. 05-cv-02255-WQH, 2006 WL 8455427, at *5 n.3 (S.D. Cal. May 5, 2006) (finding a $275.00 hourly rate reasonable); *Midway Plaza LP v. Zatarain*, No. 22-cv-00090 JLS-JLB, 2022 WL 1026720, at *4 (S.D. Cal. Apr. 6, 2022) (finding an hourly rate of $300.00 reasonable). However, markets change, and several of the decisions cited above occurred over four years ago. In addition, other cases applying the lodestar method (under different fee-shifting statutes) have found higher rates to be reasonable. *See Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-cv-01848-H-POR, 2009 WL 160235, at *4 (S.D. Cal. Jan. 20, 2009) (applying an average hourly rate of $367.00, but holding that $625.00 and $550.00 reasonable for attorneys with thirty-five and twenty-five years of experience, respectively); *Tapia v. Ford Motor Co.*, No. 3:20-cv-01510-W-MSB, 2021 WL 5863597,

at *3 (S.D. Cal. Oct. 19, 2021) (applying a blended hourly rate of $425.00, but holding that rates ranging from $335.00 to $530.00 were reasonable).  Even so, none of the above cited cases evaluated a fee over $700.00.

The Court cannot say the quality of representation supports a downward multiplier of the hourly rate, *see Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000) ("[A] district court may not rely on quality of representation to apply a *downward* multiplier unless, at the very least, the district court makes a detailed finding based on specific evidence that the quality of service was inferior in light of the hourly rate selected in setting the lodestar amount."), but the above cases do not indicate that $725.00 is a reasonable rate for a motion to remand involving fairly straightforward issues.  As such, the Court exercises its discretion and decreases the hourly rate to $575.00.  This reduction is based on Plaintiff's failure to sufficiently justify its $725.00 hourly rate, as well as cases in this district finding lower rates reasonable.  *See Fannie Mae v. Gooding*, No. 11-cv-00762-DMS-WVG, 2011 WL 2636884, at *2 (S.D. Cal. July 6, 2011) ("Section 1447(c) . . . gives the district court broad discretion, as there is no presumption for or against awarding fees."); *Integrated Actuarial Servs., Inc., v. First Auditors, LLC*, No. 05-cv-00928-DMS-JMA, 2005 WL 8173195, at *6 (S.D. Cal. July 11, 2005) (quoting 28 U.S.C. § 1447(c)) ("The removal statute confers broad discretion on the district court to award 'just costs and any actual expenses, including attorney's fees, incurred as a result of the removal . . . .'"); *Cad/Cam Publ'g, Inc. v. Archer*, No. 00-2413-IEG-CGA, 2001 WL 274555, at *3 (S.D. Cal. Feb. 28, 2001) ("[A] district court has broad discretion to award attorneys' fees and costs when granting a motion to remand in order to deter future improper removal.").

As to the number of hours billed, Mr. Belong states that his 10.2 hours were spent "reviewing and analyzing Defendants' Opposition, researching and distinguishing all of the legal authority cited therein, as well as drafting, reviewing, and revising this Reply and

my declaration in support thereof." [9]  Belong Decl. II. At 2.  The declaration further states that Mr. Hogue's 19.3 hours were spent "reviewing the Notice of Removal, researching applicable law, drafting the Motion for Remand, and reviewing and analyzing the Opposition to the Motion to Remand, and revising the Reply in this matter." *Id.*  As to the Reply, it appears there is a duplication of work.  Mr. Belong drafted the Reply but both attorneys spent time analyzing the Opposition and revising the Reply.  The declaration fails to distinguish between the tasks performed by each attorney with respect to the analytical and revisionary work.  The Court thus finds Mr. Hogue's analysis of the Opposition and revisions to the Reply duplicative, in light of Mr. Belong performing the same tasks.  Mr. Hogue spent 15.2 hours on the initial Motion to Remand, indicating that the additional 4.1 hours were spent on the Reply.  Because the Court finds Mr. Hogue's work on the Reply to be duplicative, it subtracts 4.1 hours from the 29.5 total.  This leaves 25.4 hours.

Applying the Court's reduced $575.00 hourly rate to 25.4 total hours expended, the fees amount to $14,605.00.   Accordingly, the Court **GRANTS-IN-PART** Plaintiff's request and awards Plaintiff attorneys' fees in the amount of $14,605.00.

### B.   Motion to Dismiss and Compel Arbitration

Because the Court remands this case to California Superior Court, Defendant's Motion to Dismiss and Compel Arbitration are now moot, and therefore **DENIED**.

## V.   CONCLUSION

For the above reasons, the Court orders as follows:

1.   Plaintiff's Motion to Remand is **GRANTED**.  This case is remanded to the Superior Court of California, County of San Diego.

2.   Plaintiff's Request for Attorneys' Fees is **GRANTED-IN-PART**.  Plaintiff is awarded $14,605.00.

---

[9]   At first glance, 10.2 hours spent on a reply seems excessive.  However, because Defendant's Opposition raised diversity jurisdiction as a new ground for removal—and absent any argument by Defendant—the Court finds the time is sufficiently justified.

-22-

1        3.       Defendant's Motion to Dismiss and Compel Arbitration is **DENIED** as moot.

2    **IT IS SO ORDERED.**

3    DATED:    February 28, 2023

4                           **HON. ROGER T. BENITEZ**

5                        United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28